**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **LAQUENTA MONTANEZ and SERGIO MONTANEZ, Individually and on Behalf of Themselves and Others Similarly Situated,** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| | : | |
| | : | **NO. 2:11-cv-4074-JD** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HSBC MORTGAGE CORPORATION (USA) and HSBC MORTGAGE SERVICES, INC.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

_____

**DuBOIS, J.**                                                                 **July 17, 2012**

## M E M O R A N D U M

## I. INTRODUCTION

This case arises from defendants HSBC Mortgage Corporation's ("HSBC Mortgage")

and HSBC Mortgage Services, Inc.'s ("HSBC Services") practice of force-placing[1] insurance

policies on properties that secure mortgages they issued. Plaintiffs—borrowers on whose

property defendants force-placed insurance—allege that the premiums on the force-placed

insurance policies were unreasonably high and that defendants profited unlawfully by accepting

kickbacks from insurers and purchasing unnecessary policies. Plaintiffs assert claims for breach

_____

[1] Force-placing insurance, as explained more fully below, occurs when a borrower fails to
maintain the amount of property insurance required by a mortgage contract and the lender or
servicer purchases the insurance at the borrower's expense in order to protect the lender's
security interest in the property.

of contract, unjust enrichment, and violations of Pennsylvania's Unfair Trade Practices and

Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. §§ 201-1 et seq.[2]

     Both defendants filed motions to dismiss. For the reasons that follow, the Court grants

defendant HSBC Services' Motion to Dismiss and grants in part and denies in part defendant

HSBC Mortgage's Motion to Dismiss.

## II. BACKGROUND[3]

### A. LaQuenta and Sergio Montanez

     LaQuenta and Sergio Montanez are a married couple living in Philadelphia. (Am. Compl.

¶ 16.) On or about December 13, 2005, they obtained a home mortgage loan from HSBC

Mortgage in the amount of $85,800. (Id. ¶ 17; Mortgage Contract, Am. Compl. Ex. 1.) Section

five of the mortgage contract required plaintiffs to maintain insurance on the property. (Mortgage

Contract, Am. Compl. Ex 1 § 5.) Section five of the mortgage contract also stated,

> If Borrower fails to maintain any of the coverages described above,
> Lender may obtain insurance coverage, at Lender's option and
> Borrower's expense. Lender is under no obligation to purchase any
> particular type or amount of coverage. Therefore, such coverage
> shall cover Lender, but might or might not protect Borrower,
> Borrower's equity in the Property, or the contents of the Property,
> against any risk, hazard or liability and might provide greater or
> lesser coverage than was previously in effect. Borrower
> acknowledges that the cost of the insurance coverage so obtained
> might significantly exceed the cost of insurance that Borrower
> could have obtained.

(Id.) This clause allowed HSBC Mortgage to "force-place" insurance on the property if plaintiffs

failed to maintain the required insurance. (Am. Compl. ¶ 2.) The purpose of force-placing

---

[2] In the First Amended Class Action Complaint ("Amended Complaint"), plaintiffs also make claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq. ("RESPA"). By Joint Stipulation and Order of May 3, 2012, the parties agreed to dismiss plaintiffs' RESPA claims.

[3] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiffs' Amended Complaint to be true.

insurance is to protect the lender's security interest in the property in the event that the borrower fails to insure the property adequately. (Id. ¶ 64.)

Plaintiffs obtained a homeowner's insurance policy when HSBC Mortgage issued the mortgage loan. (Id. ¶ 18.) The policy covered the period from December 9, 2005, through December 9, 2006, and the annual premium was $698. (Id.) However, the issuer of that policy notified plaintiffs in early 2006 that the policy would be cancelled "due to an adjacent dwelling that was boarded up." (Id.) Plaintiffs thereafter obtained another insurance policy, effective February 21, 2006, with an annual premium of $1,016.40 ("February 21, 2006, Policy"). (Id. ¶ 21.)

On or about April 18, 2006, HSBC Mortgage's Insurance Department sent plaintiffs a letter requesting proof of insurance and stating that HSBC Mortgage would force-place insurance on the property unless it received such proof within ten days. (Id. ¶ 22, Ex. 8.) The letter stated that the policy that HSBC Mortgage would force-place would have an annual premium of $1,302 and would not cover some items that might have been covered under plaintiffs' prior coverage. (Id.) Plaintiffs sent a fax to HSBC Mortgage on May 10, 2006, stating that they had sent HSBC Mortgage a copy of the February 21, 2006, Policy on April 5, 2006, and attaching another copy of the policy. (Id. ¶ 23.) Nevertheless, HSBC Mortgage sent plaintiffs a letter on May 19, 2006, stating that HSBC Mortgage had force-placed the insurance policy with an annual premium of $1,302.[4] (Id. ¶ 24.) Plaintiffs made the increased mortgage payments in 2006.[5] (Id.)

---

[4] It is unclear from the present state of the record why HSBC Mortgage force-placed an insurance policy on plaintiffs' property when plaintiffs allegedly had a policy on the property for the period from February 21, 2006, to February 21, 2007. Plaintiffs do not rely on this issue in making any of their claims.

[5] The Amended Complaint does not state whether plaintiffs made the required interest payments after 2006. However, neither party has alleged that plaintiffs failed to make any of

On or about April 22, 2008, plaintiffs received another letter from HSBC Mortgage's Insurance Department stating that it had purchased another force-placed insurance policy. (Id. ¶ 26.) While the letter stated that HSBC Mortgage was "now" providing the force-placed insurance, the policy actually became effective on February 21, 2008. (Id.) The annual premium was $1,271. (Id.) That policy was renewed three times, effective February 2009, February 2010, and February 2011. (Id. ¶¶ 27–29.) On April 5, 2011, the property was foreclosed upon and the Sheriff of the County of Philadelphia sold it to HSBC Mortgage for $3,500. (Id. ¶ 30, Ex. 16.)

HSBC Services was not directly involved with plaintiffs' mortgage. However, plaintiffs allege that HSBC Services "received financial benefits in connection with Mr. and Mrs. Montanez's force-placed insurance policies." (Id. ¶ 31.) The Amended Complaint does not specify how HSBC Services received such benefits; it merely states that HSBC Services and HSBC Mortgage are affiliates. (Id. ¶ 34.)

### B. General Allegations Regarding Defendants' Force-Placed Insurance Practices

HSBC Mortgage is a residential mortgage lender, originator, and servicer. (Id. ¶ 36.) HSBC Mortgage serviced plaintiffs' loan. (Id.) HSBC Services "primarily services mortgage loans of borrowers who were financed by two former institutions acquired by defendants' parent company, HSBC Holdings PLC." (Id. ¶ 37.) Plaintiffs allege that both defendants regularly use their right to force-place insurance on property to profit at the borrowers' expense. (Id. ¶ 4.) Plaintiffs allege that defendants do so in two ways: through kickbacks and redundant charges. According to the Amended Complaint, both defendants engaged in these general practices, (e.g., id. ¶ 45), and both defendants took steps to keep this scheme secret, (id. ¶¶ 65, 104, 105, 108, 109).

---

their mortgage payments at any time. HSBC Mortgage foreclosed on the property, but not until 2011. (Am. Compl. ¶ 30.)

### 1. Kickbacks

According to plaintiffs, defendants receive kickbacks from insurers that provide force-placed insurance policies. (Id. ¶¶ 54–68.) Specifically, defendants purchase force-placed insurance policies at unreasonably high prices—which the borrower ultimately pays—and then receive a certain amount of the premiums back from the insurer pursuant to either a "commission arrangement" or a "captive reinsurance arrangement." (Id.) Under a commission arrangement, the insurance provider pays a commission to the lender or the lender's affiliate—in essence, a kickback. (Id. ¶ 55.) Because the borrower ultimately bears the cost of the policy, this commission acts as payment from the borrower to lender. (Id.) Under a captive reinsurance arrangement, the lender or a subsidiary agrees to reinsure a portion of the policy in exchange for a portion of the premium. (Id. ¶ 56.) Plaintiffs allege that HSBC Mortgage accepted kickbacks in force-placing insurance on plaintiffs' property. (Id. ¶ 31.)

### 2. Redundant Charges

Defendants allegedly increase the kickbacks they receive by force-placing insurance where no insurance is necessary to protect defendants' interest in the property. (Id. ¶ 69–72.) Plaintiffs point to three ways in which defendants do so: (1) requiring borrowers to pay for insurance coverage that exceeds the amount necessary to protect defendants' interest in the property; (2) backdating policies to cover time that has already passed without damage to the property, i.e., time for which there is no risk of damage occurring to the property; and (3) insuring property for periods of time following a lapse in coverage even though the lender's interest in the property was covered during those time periods pursuant to a "standard mortgage

clause."[6] (Id. ¶ 70.) Plaintiffs allege that HSBC Mortgage backdated its force-placed insurance policies on their property and force-placed insurance notwithstanding the fact that the property was insured pursuant to a standard mortgage clause in the plaintiffs' February 21, 2006, Policy. (Id. ¶ 21.)

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 556 U.S. at 679–80; Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 556 U.S. at 679. The court must then assess "the 'nub' of the plaintiff['s]

---

[6] A "standard mortgage clause" is a clause in an insurance policy requiring the insurer to continue to insure the property, even if the insured fails to make premium payments, in order to protect a lender's interest in the property. (Id. ¶ 72.) The related "Lender's Loss Payable Endorsement" functions similarly. (Id.)

complaint—the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it

states a plausible claim for relief. Id. at 680.

## IV. DISCUSSION

Plaintiffs assert three claims against HSBC Mortgage. First, plaintiffs make a breach-of-

contract claim in Count II, alleging that HSBC Mortgage breached the implied covenant of good

faith and fair dealing inherent in every contract in Pennsylvania by secretly profiting from the

force-placement of insurance on plaintiffs' property. Second, plaintiffs make a claim in Count III

for unjust enrichment. Third, plaintiffs make a claim in Count IV under the UTPCPL's

prohibition on "fraudulent or deceptive conduct." 73 Pa. Cons. Stat. Ann. §§ 201-2(4)(xxi) &

201-3.

Plaintiffs assert two claims against HSBC Services: (1) unjust enrichment in Count III

and (2) violation of the UTPCPL in Count IV.[7] These claims are based on the same facts

underlying plaintiffs' claims against HSBC Mortgage.

HSBC Mortgage seeks dismissal of all claims against it. First, it argues that the mortgage

contract gave it discretion to force-place any insurance policy it deemed appropriate on

plaintiffs' property. Second, it argues that an action for unjust enrichment may not be maintained

in the presence of an express contract and that plaintiffs have failed to allege that HSBC

---

[7] Plaintiffs originally asserted their breach-of-contract claim against both defendants. In their Opposition to Defendant HSBC Mortgage Service Inc.'s Motion to Dismiss First Amended Class Action Complaint ("Plaintiffs' Opposition to HSBC Service's Motion to Dismiss"), plaintiffs state that they do "not oppose the dismissal, without prejudice, of the breach of contract claim as to HSBC Mortgage Services. They do so reserving all rights to re-assert such claims on their own behalf and/or on behalf of the class they seek to represent should they deem it appropriate based upon the facts as developed through discovery and through [p]laintiffs' ongoing investigation." (Pls.' Opp'n HSBC Service's Mot. Dismiss 14–15.) Accordingly, the Court dismisses without prejudice Count II of the Amended Complaint as asserted against HSBC Services.

Mortgage was unjustly enriched. Third, it argues that the economic loss doctrine bars plaintiffs' UTPCPL claim and that plaintiffs have failed to sufficiently state a claim under the UTPCPL.

HSBC Services first argues that plaintiffs lack standing to sue it under Article III of the United States Constitution because HSBC Services was not involved in force-placing the policies on plaintiffs' property. Alternatively, HSBC Services argues that plaintiffs have failed to state a claim against it under either an unjust enrichment theory or the UTPCPL.

This Memorandum will first address the Article III standing issue. Then it will proceed to the arguments related to Count II, Count III, and Count IV in turn.

## A. Article III Standing[8]

HSBC Services contends that "[p]laintiffs lack standing to sue HSBC Mortgage Services because they have not alleged any conduct undertaken by HSBC Mortgage Services in connection with the origination or servicing of their mortgage loan, let alone any conduct that caused them alleged injury." (Mem. Law Supp. Def. HSBC Mortgage Services, Inc.'s Mot. Dismiss First Am. Class Action Compl. Notice Joinder ("HSBC Services Br.") 4.)

Article III of the Constitution of the United States provides that a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided. See Golden v. Zwickler, 394 U.S. 103, 108 (1969). Standing is a legal device, the "core component [of which] is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing limits a plaintiff's ability to invoke the power of the federal courts. "In essence the question of standing is whether the

---

[8] Although the Court concludes that plaintiffs have failed to state a claim against HSBC Services, the Court addresses the standing question first because "[i]t is well-established that a plaintiff's Article III standing is a prerequisite for the federal courts to decide the merits of a suit." In re Schering Plough Corp. Intro/Temodar Consumer Class Action, 678 F.3d 235, 246 (3d Cir. 2012) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 109–10 (1998)).

litigant is entitled to have the court decide the merits of the dispute or of particular issues."

Warth v. Seldin, 422 U.S. 490, 498 (1975). As the standing requirement is derived from Article

III, it is a threshold inquiry in every case, one for which "[t]he party invoking federal jurisdiction

bears the burden" of proof. Lujan, 504 U.S. at 561. To meet this burden, the party seeking

federal jurisdiction must establish three elements:

> First, the plaintiff must have suffered "an injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." [Id. at 38, 42].

Id. at 560–61 (alterations in original) (citations omitted).

Further, plaintiffs in a putative class action "'must allege and show that they personally

have been injured, not that injury has been suffered by other, unidentified members of the class

to which they belong and which they purport to represent.'" Klein v. Gen. Nutrition Cos., 186

F.3d 338, 345 (3d Cir. 1999) (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).

Plaintiffs have established these three elements of standing with respect to their claims

against HSBC Services. First, they have alleged a "concrete and particularized" injury because

they allege that they paid too much for the force-placed insurance policies. Second, they have

established a causal connection because they allege that HSBC Services worked with HSBC

Mortgage—the entity that actually charged plaintiffs the higher premiums—to conceal the

kickbacks and redundant charges, (Am. Compl. ¶¶ 65, 104, 105, 108, 109), which allowed

HSBC Mortgage to continue with the allegedly unlawful scheme. Finally, plaintiffs seek money

damages, a "very conventional remedy" that "would do much to redress their injuries." Carlough

9

v. Amchem Prods., Inc., 834 F. Supp. 1437, 1456 (E.D. Pa. 1993) ("'[A] damage claim, by definition, presents a means to redress an injury.'" (quoting Cardenas v. Smith, 733 F.2d 909, 914 (D.C. Cir. 1984)).

For the aforementioned reasons, the Court concludes that plaintiffs have Article III standing with respect to their claims against HSBC Services.

### B. Count II—Breach of Contract Claim Against HSBC Mortgage

To prove a breach of contract under Pennsylvania law, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citation omitted). HSBC Mortgage focuses on the second element, arguing that plaintiffs have failed to allege that HSBC Mortgage breached any duty imposed by the contract because the mortgage contract explicitly allowed HSBC Mortgage to "obtain insurance coverage, at [its] option and [plaintiffs'] expense." (Mortgage Contract, Am. Compl. Ex. 1, § 1.) Further, the mortgage contract stated that HSBC Mortgage was "under no obligation to purchase any particular type or amount of coverage." (Id.) Plaintiffs respond that HSBC Mortgage "did not exercise its discretion in a reasonable manner by force-placing unnecessary insurance with excessive premiums and limited coverage while obtaining a kickback from the placement of such insurance," and thus breached the implied covenant of good faith and fair dealing inherent in every contract governed by Pennsylvania law.[9] (Pls.' Opp'n Def. HSBC Mortgage Corp.'s Mot. Dismiss First Am. Class Action Compl. ("Pls.' Opp'n HSBC Mortgage's Mot Dismiss") 24.)

---

[9] In their Opposition to HSBC Mortgage's Motion to Dismiss, plaintiffs assert for the first time a breach of an express provision of the contract. Plaintiffs argue that the mortgage contract states that "the insurance required by [HSBC Mortgage] 'shall be maintained in the amounts [] and for the periods that [HSBC Mortgage] requires.'" (Pls.' Opp'n HSBC Mortgage's Mot. Dismiss 25 (quoting Mortgage Contract, Am. Compl. Ex. 1, § 5 (second alteration in

Section 205 of the Restatement (Second) of Contracts states, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." The Pennsylvania Superior Court adopted this section of the Restatement in Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 154–55 (Pa. Super. Ct. 1989), and Baker v. Lafayette College, 504 A.2d 247, 255 (Pa. Super. Ct. 1986). "[T]he duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations." 3A Arthur L. Corbin, Corbin on Contracts § 654A(B), at 89 (Supp. 1994). "The covenant of good faith may also be breached when a party exercises discretion authorized in a contract in an unreasonable way." Phila. Plaza-Phase II v. Bank of Am. Nat'l Trust & Savings Assoc., No. 3745 APRIL TERM 2002, 2002 WL 1472337, at *6 (Pa. Ct. Com. Pl. Phila. Cnty. June 21, 2009) (citing Burke v. Daughters of the Most Holy Redeemer, Inc., 26 A.2d 460, 461 (Pa. 1942)).

In this case, plaintiffs have alleged facts sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. The purpose of a force-placement clause is to protect the lender's interest in the property securing the mortgage loan. Plaintiffs allege a scheme whereby HSBC Mortgage used its power to force-place insurance on the property to gain additional profits at plaintiffs' expense rather than using such power simply to protect its interest in the property. While section five of the mortgage contract did not require HSBC Mortgage to

---

original)).) Plaintiffs argue that HSBC Mortgage breached section five of the mortgage contract because it force-placed insurance policies that were not "required."

The Court rejects this argument. First, the claim is not included in the Amended Complaint; the Amended Complaint asserts a breach-of-contract claim based solely on the implied covenant of good faith and fair dealing. Second, as HSBC Mortgage correctly points out, plaintiffs have taken that quote out of context. The mortgage contract places no explicit limit on the amount or type of insurance that HSBC Mortgage may purchase under its force-placement powers. Rather, the clause plaintiffs cite creates a duty on plaintiffs to purchase insurance "in the amounts . . . and for the periods that [HSBC Mortgage] requires." (Mortgage Contract, Am. Compl. Ex. 1, § 1.)

obtain the cheapest or most cost-effective insurance available, it was not entitled to use its discretion to obtain secret kickbacks on policies or charge plaintiffs for insurance covering periods of time that had passed without damage occurring to the property. Such behavior contravened plaintiffs' reasonable expectations. For this reason, courts around the country have held in cases with almost identical facts that plaintiffs stated a claim for breach of the covenant of good faith and fair dealing. See, e.g., Kunzelmann v. Wells Fargo Bank, N.A., No. 9:11-cv-81373-DMM, 2012 WL 2003337 (S.D. Fla. June 4, 2012); McNeary-Calloway v. JP Morgan Chase Bank, N.A., No. C-11-03058 JCS, 2012 WL 1029502 (N.D. Cal. Mar. 26, 2012); Williams v. Wells Fargo Bank N.A., No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011); Abels v. JPMorgan Chase Bank, N.A., 678 F. Supp. 2d 1273 (S.D. Fla. 2009).[10]

In its briefs in support of its Motion to Dismiss, HSBC Mortgage cites numerous cases for the proposition that "the implied duty of good faith cannot act to displace the express terms of the contract. Further, there can be no implied duty as to any matter specifically covered by the written agreement." Middletown Carpentry v. C. Arena & Co., Inc., No. 2698, CONTROL 091526, 2001 WL 1807379, at *5 (Pa. Ct. Com. Pl. Nov. 27, 2001) (citing Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 388 (Pa. 1986)). HSBC Mortgage relies in particular on Lorah v. Suntrust Mortgage, Inc., No. 08-703, 2010 WL 5342738, at *5–6 (E.D. Pa. Dec. 17,

---

[10] HSBC Mortgage cites one case to the contrary. See Lass v. Bank of Am., No. 11-10570, 2011 WL 3567280 (D. Mass. Aug. 11 2011). Lass is unpersuasive and distinguishable. The Lass court held, in similar circumstances, that the plaintiffs had not pled facts sufficient to state a claim for a violation of the implied covenant of good faith and fair dealing because "requiring insurance coverage equal to the full replacement value of the property was not unreasonable." Id. at *5. However, the court did not discuss the lender's backdating of policies in the context of plaintiffs' claim under the implied covenant of good faith and fair dealing, even though the plaintiffs made such an argument. Further, that case is distinguishable because the plaintiffs did not argue that the kickbacks the lender allegedly received formed the basis for their good-faith-and-fair-dealing claim.

2010). In Lorah, the plaintiffs were taken in by a swindler who offered to refinance their existing mortgage at a lower rate.[11] The swindler told the plaintiffs that they should obtain a mortgage loan from the defendant bank but pay the swindler a lower monthly rate. The swindler promised to pay the defendant mortgage lender the amount owed to it. The swindler predictably failed to do so, and plaintiffs defaulted on the loan. The plaintiffs in Lorah made a claim for breach of the implied covenant of good faith and fair dealing, alleging that the defendant bank (1) unreasonably remained unaware of the swindler's activities and (2) "refus[ed] to reasonably accommodate [p]laintiffs (to [defendant's] own detriment) for the harm caused by the [swindler] (e.g., by not imposing late fees, applying certain loan balances, reporting negative credit events, or threatening foreclosure)." Id. at *5. Citing the rule that "a lending institution cannot 'violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as creditor,'" the Lorah court dismissed the plaintiffs' claims. Id. (quoting Elleta Corp. v. Bank of New England, N.A., No. 89-5077, 1990 WL 6101, at *2 n.1 (E.D. Pa. Jan. 25, 1990)).

Lorah is plainly distinguishable from this case. In that case, there was no allegation that the bank had anything to do with the swindler's activities or that the bank profited by any secret deals with third parties. Rather, plaintiffs in that case argued that the bank should have exceeded the requirements of the mortgage contract to accommodate them. Plaintiffs in this case allege that HSBC Mortgage engaged in a nefarious and secret scheme to profit from the force-placed insurance provision in the mortgage contract. That alleged scheme clearly contravened the purpose of that provison and plaintiffs' reasonable expectations of how HSBC Mortgage would use its powers under that section. Cf. Cable & Assocs. Ins. Agency, Inc. v. Commercial Nat.

---

[11] The facts of Lorah can be found in a related Third Circuit opinion, Jones v. ABN Amro Mortgage Group, Inc., 606 F.3d 119 (3d Cir. 2010).

Bank of Pa., 875 A.2d 361, 364 (Pa. Super. Ct. 2005) ("[A] lender generally is not liable for harm caused to a borrower by <u>refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons</u>." (emphasis added) (citing <u>Creeger Brick</u>, 560 A.2d at 154)).[12]

Finally, the Court notes that in many of the cases involving force-place insurance cited above, the courts were interpreting the law of states that, like Pennsylvania, do not permit the implied covenant of good faith and fair dealing to change the express terms of a contract. <u>See, e.g.</u>, <u>McNeary-Calloway</u>, 2012 WL 1029502, at *21 ("An implied covenant of good faith and fair dealing cannot contradict the terms of a contract."); <u>Abels</u>, 678 F. Supp. 2d at 1278 ("[A]s long as the implied covenant does not vary the express terms of the contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing."). Nevertheless, those cases refused to dismiss the plaintiffs' claims, even when confronted with arguments similar to those that HSBC Mortgage makes in this case. The Court finds these cases very persuasive.

For the reasons stated above, the Court concludes that plaintiffs have stated a claim for breach of the implied covenant of good faith and fair dealing. Thus, the Court denies HSBC Mortgage's Motion to Dismiss as to Count II.

---

[12] HSBC Mortgage relies on another case, <u>Brisbin v. Superior Valve Co.</u>, 398 F.3d 279 (3d Cir. 2005), which held that "a court may not rewrite the clear provisions of a contract to make it more reasonable or to protect a party against an unwelcome result." <u>Id.</u> at 290. <u>Brisbin</u> is inapposite. There was no alleged breach of the implied covenant of good faith and fair dealing in <u>Brisbin</u>. Rather, the lower court in <u>Brisbin</u> "extend[ed] the contracts beyond their expiration dates to allow [plaintiff] to receive its 'full expectation interest.'" <u>Id.</u> Here, plaintiffs do not ask the Court to alter express provisions of the mortgage contract. Rather, they argue that HSBC Mortgage exercised its discretion under the mortgage contract unreasonably.

### C. Count III—Unjust Enrichment

In Count III, plaintiffs make claims for unjust enrichment against both defendants. For the reasons that follow, the Court grants both defendants' motions to dismiss with respect to Count III.

#### 1. Unjust-Enrichment Claim Against HSBC Mortgage

HSBC Mortgage argues that the existence of the mortgage contract bars plaintiffs' claim for unjust enrichment against HSBC Mortgage. Plaintiffs acknowledge that unjust enrichment claims are "not applicable to agreements deliberately entered into by the parties," Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co., 44 A.2d 571, 574 (Pa. 1945), but argue that they are entitled to plead in the alternative by alleging both breach of contract and unjust enrichment. For the reasons that follow, the Court agrees with HSBC Mortgage and concludes that plaintiffs' unjust-enrichment claim against HSBC Mortgage must be dismissed.

Pennsylvania has long ascribed to the rule that when "the parties' relationship is based on an express written contract no unjust enrichment recovery is permitted." Novacare, Inc. v. S. Health Mgmt. Inc., No. 97-5903, 1998 WL 470142, at *1 (E.D. Pa. Aug. 11, 1998); see also First Wis. Trust Co. v. Strausser, 653 A.2d 688, 693 n.2 (Pa. Super. 1995) ("[T]he existence of the written note and/or mortgage agreement precludes a claim of unjust enrichment."); Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969) ("[T]his Court has found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract."). There is no dispute that plaintiffs and HSBC Mortgage entered into a binding contract that governed the terms of the mortgage, including the power of HSBC Mortgage to force-place insurance.

Plaintiffs argue that they are exercising their right to plead in the alternative. However, this argument ignores the fact that, in this case, there is no dispute that the mortgage contract was valid and enforceable. Courts typically allow a plaintiff to plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists. See, e.g. Premier Payments Online, Inc. v. Payment Sys. Worldwide, No. 11-3429, 2012 WL 262680, at *11 (E.D. Pa. Jan. 27, 2012) ("A plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a 'question as to the validity of the contract in question.'" (quoting AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC, No. 10-6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011))); Sur. Admins., Inc. v. Pacho's Bail Bonds, No. 05-CV-5851, 2007 WL 1002136, at *4 (E.D. Pa. Mar. 30, 2007) (allowing a plaintiff to plead breach-of-contract and unjust-enrichment claims alternatively where defendant "dispute[d] the existence of a contract"); DTK Ventures, L.P. v. Russo, No. 05-EQ-4059, 2006 WL 2988463, at *5 (Pa. Com. Pl. Lackawanna Cnty. Aug. 21, 2006) (allowing such alternative pleading where the plaintiff alleged "that in the event that an express contract is found not to exist, the [defendants'] conduct created an enforceable implied contract").[13]

---

[13] Plaintiffs cite two other cases in which they contend courts permitted the pleading of breach-of-contract and unjust-enrichment claims alternatively even though there was no dispute as to the contract's validity or enforceability. In Robinson v. Holiday Universal, Inc., No. 05-5726, 2006 WL 2642323 (E.D. Pa. Sept. 11, 2006), the court permitted such alternative pleading even where the plaintiffs "plead that there [were] written contracts between the parties." Id. at *8. The Court finds the reasoning of Robinson unpersuasive and declines to follow it because the Robinson court did not directly address the question whether a plaintiff can plead a breach-of-contract claim and an unjust-enrichment claim in the alternative where there was no dispute as to the existence of the contract.

The other case plaintiffs rely on, United States v. Kensington Hospital, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991)—coincidentally the only case that Robinson relied on for this point—is distinguishable. As another case has pointed out, the Kensington Hospital "court allowed an alternative claim for unjust enrichment where plaintiff had claimed breach of contract

Because there is no dispute that the mortgage contract in this case was valid and enforceable, plaintiffs may not assert an unjust-enrichment claim premised on the absence of a contract. Thus, plaintiffs' unjust-enrichment claim against HSBC Mortgage is dismissed.

### 2. Unjust-Enrichment Claim Against HSBC Services

Because there is no contract between plaintiffs and HSBC Services, the analysis set forth in the previous section does not apply to plaintiffs' unjust-enrichment claim against HSBC Services. HSBC Services argues nonetheless that plaintiffs have failed to state a claim against it. For the reasons that follow, the Court agrees.

"In Pennsylvania, a party seeking to plead unjust enrichment must allege the following elements: '(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" Kliesh v. Select Portfolio Servicing, Inc., No. 12-548, 2012 WL 2500973, at *8 (E.D. Pa. June 29, 2012) (quoting Giordano v. Glaudio, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010)). Plaintiffs have failed to allege that they conferred a benefit of HSBC Services. HSBC Services did not service plaintiffs' mortgage contract and did not benefit from HSBC Mortgage's force-placement of insurance policies on plaintiffs' property; in fact, HSBC Services had nothing to do with plaintiffs' mortgage contract. HSBC Mortgage was the entity that force-placed the insurance policies on plaintiffs' property, and plaintiffs made mortgage payments to HSBC Mortgage, not HSBC Services.

---

because the contract at issue only encompassed a part of the relationship between the parties." Sheinman Provisions, Inc. v. Nat'l Deli, LLC, No. 08-cv-453, 2008 WL 2758029, at *4 (E.D. Pa. July 15, 2008).

The only allegation that plaintiffs' payments benefitted HSBC Services is contained in paragraph thirty-one of the Amended Complaint, which states, "Upon information and belief, Defendants and/or their subsidiaries/affiliates received financial benefits in connection with Mr. and Mrs. Montanez's force-placed insurance policies."[14] Plaintiffs do not explain, even in general terms, how HSBC Mortgage "received financial benefits" from plaintiffs. This conclusory allegation is "not entitled to the assumption of truth" and must be disregarded. Iqbal, 556 U.S. at 679.[15]

Plaintiffs argue that they have alleged that HSBC Services assisted HSBC Mortgage in both carrying out its scheme and keeping that scheme secret. However, this does not change the fact that plaintiffs have not alleged that HSBC Services received a benefit from plaintiffs.

Accordingly, the Court concludes that plaintiffs have failed to state a claim for unjust enrichment against HSBC Services.

### D. Count IV—UTPCPL

Plaintiffs make claims against both defendants under the UTPCPL, 73 Pa. Stat. Ann. §§ 201-1 et seq. Section 201-3 of the UTPCPL makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful."

---

[14] Plaintiffs did not aver in the Amended Complaint that HSBC Services received any direct benefit from plaintiffs, as opposed to "borrowers" generally. (See, e.g., Am. Compl. ¶ 70 ("Defendants have required borrowers to pay for unnecessary insurance coverage." (emphasis added)).) However, that some class members may have conferred a benefit on HSBC Services does not save plaintiffs' claim. See Klein v. Gen. Nutrition Cos., 186 F.3d 338, 345 (3d Cir. 1999) (holding that plaintiffs had failed to state a claim where named plaintiffs representing a class failed to allege that they had been personally injured, as opposed to alleging that unnamed class members had been injured).

[15] The only inference the Court can draw from this allegation is that HSBC Services derives benefit from the revenue of HSBC Mortgage because the two entities are affiliates. However, "[a]s a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 341 n.44 (3d Cir. 2010).

Section 201-2(4)(xxi), the so-called "catch-all" definition, defines "[u]nfair methods of competition and unfair or deceptive acts or practices" as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Plaintiffs claim that defendants' scheme of profiting from the force-placement of insurance constitutes "deceptive conduct" under the UTPCPL.

Both defendants seek dismissal of Count IV, albeit on different grounds. This Memorandum will first address HSBC Mortgage's argument that the economic loss doctrine bars plaintiffs' claim under the UTPCPL against HSBC Mortgage. It will then address HSBC Services' argument that plaintiffs have failed to state a claim against it for a violation of the UTPCPL.

### 1. UTPCPL Claim Against HSBC Mortgage

HSBC Mortgage argues that plaintiffs' UTPCPL claim is barred by the economic loss doctrine. The economic loss doctrine provides that "no cause of action [can] be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." 2–J Corp. v. Tice, 126 F.3d 539, 541 (3d Cir. 1997). "The doctrine developed in the products liability context to prevent tort recovery where the only injury was to the product itself." Sarsfield v. CitiMortgage, Inc., 707 F. Supp. 2d 546, 556 (M.D. Pa. 2010). However, courts have expanded its scope and applied it in a myriad of settings, including to claims under the UTPCPL. Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002).

In Werwinski, the Third Circuit addressed for the first time the question whether the economic loss doctrine applies to intentional torts, including claims under the UTPCPL

involving allegations of fraud. Id.[16] The Werwinski court held that the economic loss doctrine

applies to claims under the UTPCPL, but only "'where the claims at issue arise independent[ly]

of the underlying contract.'" Id. at 676 (alteration in original) (quoting Raytheon Co. v.

McGraw-Edison Co., Inc., 979 F. Supp. 858, 870 (E.D. Wis. 1997)). Later cases expounded on

this narrow exception, holding that "'fraudulent representations concerning a party's

performance of a contract are interwoven with the terms of the contract,'" and the economic loss

doctrine bars them. Wulf v. Bank of Am., 798 F. Supp. 2d 586, 596 (E.D. Pa. 2001) (quoting

Ferki v. Wells Fargo Bank, Nat. Ass'n, No. 10-2756, 2010 WL 5174406, at *10 (E.D. Pa. Dec.

20, 2010)).

　　　In this case, plaintiffs have suffered purely economic loss. Plaintiffs do not allege any

injury to themselves or to their tangible property. In essence, plaintiffs contend that HSBC

Mortgage's behavior caused plaintiffs to pay too much for insurance coverage. This is analogous

to the Werwinski plaintiffs' claim they paid too much for faulty automobile transmissions.

　　　Further, the narrow exception from Werwinski does not apply in this case because

plaintiffs' claim does not "arise independently of the underlying contract." The HSBC

Mortgage's alleged behavior on which plaintiffs' UTPCPL claim is based relates exclusively to

the force-placement of insurance policies, which is governed by section five of the mortgage

contract. In other words, plaintiffs allege "fraudulent representations concerning a party's

---

[16] Werwinski has generated a good deal of controversy. See Ferki v. Wells Fargo Bank, Nat. Ass'n, No. 10-2756, 2010 WL 5174406, at *10 n.5 (E.D. Pa. Dec. 20, 2010). However, "[a]bsent contrary authority from the Third Circuit or Pennsylvania Supreme Court . . . this Court is bound to the holding in Werwinski." Id. (citing DeFebo v. Andersen Windows, Inc., 654 F. Supp. 2d 285, 294 (E.D. Pa. 2009))

performance of a contract," which the <u>Wulf</u> court held to be "interwoven" with the contract and thus, not subject to the exception in <u>Werwinski</u>. 798 F. Supp. 2d at 596.[17]

Accordingly, the economic loss doctrine bars plaintiffs' claim under the UTPCPL against HSBC Mortgage. Count IV, as asserted against HSBC Mortgage, is dismissed.

### 2. HSBC Services

HSBC Services argues that plaintiffs have failed to allege facts sufficient to state a claim for deception under the UTPCPL.[18] As noted above, sections 201-2(4)(xxi) and 201-3, when read together, make it unlawful to "engag[e] in . . . deceptive conduct which creates a likelihood

---

[17] Plaintiffs argue that it is not appropriate to determine at this stage whether the economic loss doctrine applies because plaintiffs have not yet had the opportunity to develop facts. However, the cases on which plaintiffs rely, <u>Owen J. Roberts School District v. HTE, Inc.</u>, No. 02-7830, 2003 WL 735098 (E.D. Pa. Feb. 28, 2003), and <u>Williams v. Hilton Group PLC</u>, 93 F. App'x 384, 386 (3d Cir. 2004), dealt with the "gist of the action" doctrine. While related to the economic loss doctrine, the gist of the action doctrine consists of a different analysis than that of the economic loss doctrine. The gist of the action doctrine analysis focuses on whether a plaintiff's claim is based in contract rather than tort. <u>See</u> <u>eToll, Inc. v. Elias/Savion Adver., Inc.</u>, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). This "call[s] for a fact-intensive judgment as to the true nature of a claim." <u>Williams</u>, 93 F. App'x at 386. The economic loss doctrine, on the other hand, simply looks to whether a plaintiff has pled personal injury or damage to tangible property. <u>2–J Corp.</u>, 126 F.3d at 541. This determination can be made from the face of the complaint.

[18] The economic loss doctrine does not apply to plaintiffs' claim against HSBC Services because there is no privity of contract between plaintiffs and HSBC Services. Although courts often hold that the economic loss doctrine can apply even in the absence of contractual privity, <u>Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.</u>, 648 F. Supp. 2d 707, 713–14 (E.D. Pa. 2009) (collecting cases), those cases all involved negligence claims, not fraud or other intentional torts. As explained above, <u>supra</u> Section IV.D.1, <u>Werwinski</u> held that the economic loss doctrine applies to claims involving intentional torts. However, <u>Werwinski</u> relied heavily on the existence of a contract between the parties in that case. <u>See</u> 286 F.3d at 671 ("The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" (quoting <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995))). Given the criticism that both federal and lower Pennsylvania courts have heaped on <u>Werwinski</u>, <u>see</u> <u>Ferki</u>, 2010 WL 5174406, at *10 n.5; <u>O'Keefe v. Mercedes-Benz USA, LLC</u>, 214 F.R.D. 266, 274–77 (E.D. Pa. 2003), and the fact that <u>Werwinski</u> relied on the existence of a contract in reaching its conclusion, the Court declines to extend <u>Werwinski</u> to situations in which the parties are not in contractual privity.

of confusion or of misunderstanding." To state a claim for "deceptive conduct" under the

UTPCPL, a plaintiff must satisfy three elements:

> First, a plaintiff must allege facts showing a deceptive act, that is
> conduct that is likely to deceive a consumer acting reasonably
> under similar circumstances. Next, the plaintiff must allege
> justifiable reliance, in other words that he justifiably bought the
> product in the first place (or engaged in some other detrimental
> activity) because of the defendants' misrepresentation or deceptive
> conduct. Finally, the plaintiff must allege that this justifiable
> reliance caused ascertainable loss.

Seldon v. Home Loan Serv., Inc., 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (internal quotations

and citations omitted); see also Vassalotti v. Wells Fargo Bank, N.A., 732 F. Supp. 2d 503, 510–

11 (E.D. Pa. 2010). "A plaintiff alleging deceptive conduct may proceed without satisfying the

particularity requirement of Federal Rule of Civil Procedure 9(b)."[19] Vassalotti, 732 F. Supp. 2d

at 511 (citing Seldon, 647 F. Supp. 2d at 469–70).

Plaintiffs have not alleged that HSBC Services engaged in any conduct that could be

described as deceptive. "Deception . . . is defined as intentional misleading by falsehood spoken

or acted." Christopher v. First Mut. Corp., No. 05-1149, 2006 WL 166566, at *3 (E.D. Pa. Jan.

20, 2006); accord Sherzer v. Homestar Mortg. Servs., No. 07-5040, 2010 WL 1947042, at *7

(E.D. Pa. May 7, 2010), report and recommendation adopted as modified, No. 07-5040, 2010

WL 2649852 (E.D. Pa. July 1, 2010). Accordingly, the court in Christopher dismissed a

plaintiff's deception claim under the UTPCPL because "[t]here were no representations and no

contact between [plaintiff] and [defendants]." Christopher, 2006 WL 166566, at *3. Plaintiffs

---

[19] Although some courts have disagreed with this conclusion, see In re Balko, 348 B.R.
684, 697 n.16 (W.D. Pa. 2006), most cases confronting the issue have determined that the
Pennsylvania legislature's decision to add the word "deceptive" to section 201-2(4)(xxi) was an
attempt to expand the UTPCPL's scope beyond acts that fall within the common law definition
of fraud. See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig., 580 F. Supp.
2d 896, 908 (N.D. Cal. 2008) (applying the UTPCPL and noting "that the amendment would
have been without meaning if the catch-all still covered only fraudulent conduct.").

argue that they have satisfied the elements of deception under the UTPCPL because they allege that HSBC Services helped HSBC Mortgage keep the scheme secret. However, they do not allege any specific acts that HSBC Services took to do so, nor do they allege that HSBC Services engaged in any "spoken or acted" falsehood.[20] Like in <u>Christopher</u>, there were "no representations and no contact between" HSBC Services and plaintiffs.

Accordingly, plaintiffs have failed to state a claim against HSBC Services under the UTPCPL.

## V. CONCLUSION

For the above-stated reasons, the Court grants in part and denies in part HSBC Mortgage's Motion to Dismiss and grants HSBC Services' Motion to Dismiss. Count III, a claim for unjust enrichment, and Count IV, a claim under the UTPCPL, are dismissed with respect to plaintiffs' claims against HSBC Mortgage. All claims against HSBC Services are dismissed. The dismissal of plaintiffs' claims is without prejudice to plaintiffs' right to file a Second Amended Class Action Complaint consistent with this Memorandum if warranted by the facts.

An appropriate Order follows.

---

[20] Plaintiffs also argue that "the actions of each [d]efendant, as a scheme member, are attributable to each other for purposes of establishing liability." (Pls.' Opp'n Def. HSBC Mortgage Service Inc.'s Mot. Dismiss First Amended Class Action Compl. 16.) Although plaintiffs cite cases involving civil conspiracy to support this claim, plaintiffs have not asserted a claim for civil conspiracy. Without pleading facts demonstrating that HSBC Services itself engaged in a deceptive act, plaintiffs cannot state a claim under the UTPCPL against HSBC Services.